IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-038-CV





CITY OF EL PASO AND PUBLIC UTILITY COMMISSION OF TEXAS,



 APPELLANTS


vs.





EL PASO ELECTRIC COMPANY,



 APPELLEE




 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT



NO. 91-0122, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING



 






 El Paso Electric Company and the City of El Paso sued for judicial review of a
final order issued by the Public Utility Commission in a contested case, a "fuel-reconciliation
proceeding" initiated by the Company in which the City intervened. See Public Utility Regulatory
Act (PURA), Tex. Rev. Civ. Stat. Ann. art. 1446c, § 69 (West Supp. 1993); Texas
Administrative Procedure and Texas Register Act (APTRA), Tex. Rev. Civ. Stat. Ann. art. 6252-13a, § 19 (West Supp. 1993). In its final judgment, the district court affirmed the agency order
in one part and reversed it in another, remanding the case to the Commission. The Commission
and the City appeal. See APTRA § 20. We will affirm the district-court judgment.



FUEL-RECONCILIATION PROCEEDINGS


 An electric utility is generally entitled to recover through its rates any sums
expended for reasonable and necessary operating expenses, including the cost of fuel and fuel-related items. PURA § 39(a). A utility incurs these fuel costs directly when it generates its own
electric power; it incurs them indirectly, as an element of the price paid, when the utility buys
electric power from another. Although the Company generates its own electric power, it also
purchases electric power under a contract with Southwestern Public Service Company.

 Before 1983, the Commission calculated an electric utility's operating expenses
(and hence the utility's rates) based on actual fuel costs, authorizing the utility to "pass through"
automatically to its customers any increases or decreases in such costs. (1) The legislature forbade
the practice in 1983. (2) To accommodate the new legislation, the Commission promulgated a set
of rules known collectively as the "fuel rule." 8 Tex. Reg. 3540 (1983) (16 Tex. Admin. Code
§ 23(b), since amended). 

 As a practical matter, the Commission cannot embark upon and decide a new rate
case with each variation in fuel prices. The agency therefore adopted, for its ratemaking, the
device of a "fixed fuel factor." This factor is the sum of a utility's "known costs" for fuel plus
its "reasonably predictable fuel costs." The latter element renders the sum a mere estimate of the
utility's fuel costs. Nevertheless, the estimate is fixed for ratemaking purposes as the utility's
hypothetical fuel cost; it is used in calculating the utility's total operating expenses and, 
ultimately, the rates the utility is permitted to charge its customers. 16 Tex. Admin Code
§§ 23.23(b)(2)(B), 23.23(c). Because actual fuel costs may vary from the estimate, after the rates
go into effect, the utility may recover through its rates more or less than the net income its rates
were designed to produce. Consequently, the fuel rule provides for periodic adjustments or
"reconciliations" of the difference between actual fuel costs and the hypothetical cost represented
by the fixed-fuel factor. 16 Tex. Admin. Code § 23.23(b)(2)(H). The reconciliation may be part
of a general rate case or an independent reconciliation proceeding. Id. Depending on the result
of the reconciliation, the utility may be required to refund to its customers an over-recovery of
fuel costs or it may be permitted to recoup an under-recovery through surcharges to its customers. 
16 Tex. Admin. Code §§ 23.23(b)(2)(B), (F), (G). 



PURCHASED-POWER CAPACITY COSTS


 Not every fuel-related cost is includable in a utility's fixed-fuel factor;
consequently, not every fuel-related cost is recoverable through the reconciliation process. One
excludable item is denominated "purchased power capacity costs." The term "capacity costs"
refers to one element of the price charged by a seller of electric power--an element that represents
the seller's fixed costs in generating the power. (Another element, denominated "energy
charges," represents the seller's variable costs in generating the power--the cost of fuel, for
example). A Commission regulation presently excludes from a utility's fixed-fuel factor the
capacity-cost element of purchased power "unless the utility demonstrates that such treatment is
justified by special circumstances." 16 Tex. Admin. Code § 23.23(b)(2)(B)(ii). The
Commission's regulations did not always allow for exceptions when "justified by special
circumstances." Before the regulation was adopted, the Commission issued its final order in an
earlier contested case under the agency's docket number 6350.



Docket Number 6350



 Docket number 6350 was a general rate case that included a reconciliation
proceeding. The Company satisfied the Commission that special considerations justified
reconciliation treatment of the capacity costs the Company paid to Southwestern, during the period
March 1984 through July 1985, even though such costs would not ordinarily be entitled to such
treatment. The Commission's final order in docket number 6350 demonstrates that the special
considerations were "equitable" in nature: (1) the purchases of power from Southwestern had
benefitted the Company's customers; (2) capacity costs were a necessary element of the
Southwestern charges; and (3) it would be inequitable to penalize the Company for successfully
reducing its customers' bills by purchasing cheaper power from Southwestern. The Commission's
decision in this earlier case preceded by about nine months the amendment of the fuel rule to
allow expressly for the reconciliation of capacity costs upon a demonstration of "special
circumstances"; that is to say, the Commission viewed the equitable considerations as amounting
to an implied exception to a general rule that capacity costs were non-reconcilable. It appears to
us self-evident, therefore, that "equitable" considerations could come within the express exception
presently made by section 23.23(b)(2)(B)(ii) for "special circumstances." No argument is made
to the contrary in the present appeal.

 The Commission's final order in docket number 6350 also adopted a part of the
examiner's report wherein he stated that he agreed with a witness's view that the capacity costs
paid to Southwestern "should be treated as a non-reconcilable expense prospectively." This gives
rise to a part of the present controversy.



Docket Number 8588


 The contested case now before us on appeal was conducted under the Commission's
docket number 8588. It is not a rate case but rather an independent reconciliation proceeding. 
In this proceeding, the Company requested reconciliation of $4,202,090 in capacity costs paid to
Southwestern between July 31, 1985, and April 25, 1986, a period of about nine months. The
period is the interval between the last day of the reconciliation period covered in docket number
6350 (July 31, 1985) and the effective date of the new rates established in that contested case
(April 25, 1986). As special circumstances justifying reconciliation of the capacity costs paid in
that period, the Company pointed to the Commission's final order in docket number 6350,
wherein the agency had declared that capacity costs should be treated as non-reconcilable
"prospectively." The word "prospectively" meant, according to the Company, from and after the
effective date (April 25, 1986) of the new rates established in docket number 6350. Hence, by
force of that order, the Company was entitled to reconciliation of capacity costs paid in the nine-month interval before the new rates became effective.

 In its finding of fact 14 in docket number 8588, the Commission rejected the
Company's contention, stating simply that the Company had "failed to show special circumstances
warranting inclusion" of such capacity costs in the reconciliation. The sole basis for this
conclusion is found in a portion of the examiner's report, which the Commission adopted in its
final order: The word "prospectively," as used in the final order in docket number 6350, meant
from and after July 31, 1985--the end of the reconciliation period covered in docket number
6350--as opposed to the Company's contention that the word meant from and after April 25, 1986,
the effective date of the rates set in the Commission's final order in docket 6350.

 The Company sued for judicial review of this aspect of the Commission's final
order in docket number 8588. The district court reversed the agency order on the ground that it
was arbitrary and capricious in failing adequately to explain why the capacity charges were
admitted to reconciliation in the one period and denied reconciliation in the next succeeding
period. The court remanded the case to the Commission to supply an explanation. In the
Commission's only point of error and in the City's first point of error, they complain of this
aspect of the district-court judgment.



Discussion and Holdings


 In its final order in the present case, the Commission gave a single ground for its
decision regarding capacity costs: the Company failed to demonstrate the requisite "special
circumstances" because the word "prospectively," as used in the final order adjudicating docket
number 6350, meant from and after July 31, 1985. The final order in the present case, excluding
capacity costs from reconciliation, must stand or fall on that basis. We are not at liberty to sustain
the order on some other basis we might imagine as being sufficient for the different treatment in
the two cases--for example, an apparent difference in the material factual circumstances as between
the two proceedings. We may judge the sufficiency of the Commission's order solely on the basis
given by the agency itself for its decision; to do otherwise would constitute an invasion of the
agency's province. Morgan Drive Away, Inc. v. Railroad Comm'n, 498 S.W.2d 147, 152 (Tex.
1973); Professional Mobile Home Transp. v. Railroad Comm'n, 733 S.W.2d 892, 904 (Tex.
App.--Austin 1987, writ ref'd n.r.e.).

 We note first that the examiner's purported explanation--that the word
"prospectively" meant from and after July 31, 1985--adds nothing to enlighten the Commission's
naked conclusion that the Company had failed to demonstrate the necessary special circumstances. 
Both the conclusion and the purported explanation are equally opaque. The word "prospectively"
was ambiguous in context, and nothing in the record before us suggests why the Commission
preferred one date over another. We are left ultimately with the stark conclusion that
"prospectively" means from and after July 31, 1985, merely because that is what the examiner in
docket number 8588 decided it meant. Was the Commission legally obliged to supply an actual
reason or explanation for its choice of meanings? We believe it was.

 We cannot find that the legislature has imposed upon the Commission, by an
explicit statutory enactment, a duty to supply an explanation or reason for its action. But such a
requirement need not have a statutory origin. It is preeminently a concomitant of a court's duty
of judicial review, a duty assigned the trial court and this court in PURA § 69. This statute
contemplates meaningful judicial review, not a charade of the real thing; therefore it implies a
power to require the Commission to supply any reasons or explanations necessary for the
reviewing court to understand the Commission's final order.



If the administrative action is to be tested by the basis upon which it purports to
rest, that must be set forth with such clarity as to be understandable. It will not do
for a court to be compelled to guess at the theory underlying the agency's action;
nor can a court be expected to chisel that which must be precise from what the
agency has left vague and indecisive. In other words, "We must know what a
decision means before the duty becomes ours to say whether it is right or wrong."



S.E.C. v. Chenery Corp., 332 U.S. 194, 196 (1947) (emphasis added) (citations omitted); see also
S.E.C. v. Chenery Corp., 318 U.S. 80, 94 (1943) ("[T]he orderly functioning of the process of
review requires that the grounds upon which the administrative agency acted be clearly disclosed
and adequately sustained.") (emphasis added); see generally Bernard Schwartz, Administrative
Law § 7.29, at 429 (2d ed. 1984); Kenneth C. Davis, Administrative Law Text § 16.07, at 326 (3d
ed. 1972). The requirement of explanations or reasons is frequently imposed when it appears to
the reviewing court that an agency has departed from its earlier administrative policy or there
exists an apparent inconsistency in agency determinations. Louis Jaffe, Judicial Control of
Administrative Action 587 (1965); see, e.g., Atcheson, T. & S. F. Ry. Co. v. Wichita Bd. of
Trade, 412 U.S. 800, 808 (1973); Secretary of Agric. v. United States, 347 U.S. 645, 653 (1954). 
The requirement for explanatory "reasons" should not be confused with a statutory requirement
that binds an agency to supply findings of fact in support of its conclusions of law, as in APTRA
§ 16(b). "Reasons differ from findings in that reasons relate to law, policy, and discretion rather
than to facts." Davis, supra, at 326. Nevertheless, agencies frequently use findings of fact to
explain the conclusions which express their choices in matters of discretion, law, and policy. 
Schwartz, supra, at 428-30.

 We believe the Supreme Court of Texas, in Public Utility Commission v. Gulf
States Utilities, 809 S.W.2d 201, 212 (Tex. 1991), adopted a requirement that agencies must
supply explanations or reasons when these are necessary to an intelligent understanding of their
final orders. There, the court reversed a Commission decision because the agency record revealed
that the Commission had apparently considered only a single factor in taking a particular
discretionary action (dividing between a utility and its ratepayers the benefit of proceeds received
from the sale of a utility asset). The court noted that numerous other factors, including equitable
considerations, appeared applicable to the agency's decision in the matter. In reversing the
Commission's final order, the court wrote that the agency "ignored" the other, apparently
applicable factors, while referring only to the testimony of two witnesses whose conclusions were
not explained in the record, and "the Commission did not articulate its reasons for" deciding the
issue based on the single factor alone. In its remand, the court refrained from instructing the
Commission to consider particular factors and from prohibiting its consideration of other factors,
leaving the agency free to choose and "set forth the factors it considers relevant" together with
an explanation of "how these factors are evaluated in the present case." Id. at 211-12. While the
court nominally reversed the agency order for a want of "substantial evidence," it is readily
apparent that the court did so only because of the rather peculiar meaning "substantial evidence"
bears in Texas administrative law--a meaning that generally incorporates into a single legal precept
both arbitrary and capricious agency action under APTRA § 19(e)(6) and a true want of
substantial evidence under APTRA § 19(e)(5).  See generally Kerry McGrath, Substantial
Evidence Review in Texas--Still Insubstantial After All These Years, 44 Baylor L. Rev. 223 (1992).

 We hold, therefore, that the Commission's final order erroneously omitted to
supply a necessary explanation for the choice of meaning it assigned to the word "prospectively,"
producing thereby the inconsistent treatment of capacity costs in the two back-to-back
reconciliation periods. As in Gulf States, the agency order in docket number 8588 referred only
to the statement of an individual (the hearing examiner in docket number 6350) whose naked
conclusion was not explained in the record. We agree with the trial court that the failure to supply
the necessary explanation was an abuse of discretion under APTRA § 19(e)(6); it is immaterial
that under the peculiar Texas view of "substantial evidence" the omission would also amount to
a want of "substantial evidence" under APTRA § 19(e)(5).

 The City and the Commission raise several arguments to the contrary. They first
complain the Company offered no "evidence" of special circumstances. It is clear from the
record, however, that the Company was not relying upon evidentiary grounds for its contention
that such special circumstances existed in docket number 8588, the case we now review. Rather,
the Company was relying upon legal grounds--that the final order in docket number 6350, properly
construed, encompassed the nine months for which reconciliation was requested in docket number
8588. Indeed, the Commission in docket number 8588 rejected the claim for reconciliation on
legal grounds, not evidentiary or factual grounds, by basing the agency ruling on a construction
of the previous order, albeit in a manner contrary to that advocated by the Company. We do not
understand that the term "special circumstances" means evidentiary grounds exclusively, and no
party suggests that it does.

 The City and the Commission argue next that the examiner's report in docket
number 6350 was "clear" in affirmatively and expressly prohibiting "prospective recovery of
capacity charges," meaning "all capacity charges not placed in issue in that docket." We disagree.

 The relevant part of the examiner's report declares: (1) the examiner agreed that
capacity costs "should be treated as a non-reconcilable expense prospectively"; (2) however, that
would be inequitable (for specified reasons) with respect to "past payments" of such costs; (3)
therefore, the examiner recommends that "prior" capacity-cost expenses be included "in the
reconciliation balance." These declarations are clear on one point--capacity costs paid before July
31, 1985, the end of the reconciliation period in docket number 6350, would be reconcilable
expenses under the examiner's recommendation. The declarations are not clear in the sense urged
by the City and the Commission--that they affirmatively and expressly prohibit reconciliation of the
capacity costs presently in dispute. In fact, the City offers no argument in support of its
conclusion that the declarations are "clear" in excluding these capacity costs from reconciliation;
the Commission offers only the opaque generality that an administrative agency's interpretation
of its order is entitled to judicial deference.

 We find in the declarations nothing to suggest that the Commission, by adopting
its examiner's report in docket number 6350, prohibited reconciliation of capacity-cost expenses
in the period July 31, 1985 -- April 25, 1986. Indeed, the examiner's declarations reasonably
imply in context that capacity costs paid in the period were entitled to the same equitable
justification because April 25, 1986, was the date when the examiner's declarations first acquired
legal force and effect by the Commission's adoption of them. The terms of the examiner's
recommendation do not suggest that the equitable considerations became inoperable on July 31,
1985, or that the expressions "past payments" and "prior" capacity-cost expenses referred to a
date other than the effective date of the order in docket number 6350.

 The City and the Commission argue that the Company's contention amounts to no
more than a complaint of "regulatory lag" during the nine months between the end of the
reconciliation period in docket number 6350 and the effective date of the final order in that
contested case. And, they properly point out, losses occasioned merely by regulatory lag are not
recoverable by a utility. We disagree with the theory. "Regulatory lag" refers to delay in the
"decisional process" of a regulatory agency. Railroad Comm'n v. Lone Star Gas Co., 656
S.W.2d 421, 423 (Tex. 1983). The Company does not complain of any delay in the "decisional
process" in docket number 6350. It complains instead of the apparently arbitrary meaning
assigned in the present case to the word "prospectively" as that word was adopted in the
Commission's final order in docket number 6350. That choice of meaning, and not any delay in
the "decisional process," fixed the time period in dispute.

 Finally, the City and the Commission argue that the phrase "arbitrary and
capricious," recited in the district-court judgment as the basis for reversing the Commission's final
order, does not encompass the agency's failure to explain its different treatment of capacity costs
as compared to docket number 6350. Hence, they contend, apparently, that the Commission's
final order could not be reversed on the ground that it was "arbitrary and capricious." In support
of their argument, the City and the Commission cite judicial decisions that were decided on
arbitrary and capricious grounds on an apparent theory that these exhaust the possibilities and
define the limits of arbitrary and capricious action under APTRA § 19(e)(6). See Lewis v.
Metropolitan Sav. and Loan Ass'n, 550 S.W.2d 11 (Tex. 1977); Railroad Comm'n v. Alamo
Express, 308 S.W.2d 843 (Tex. 1958); Public Util. Comm'n v. South Plains Elec. Coop., 635
S.W.2d 954 (Tex. App.--Austin 1982, writ ref'd n.r.e.). We disagree with the theory. In any
case, we are obliged to affirm the district-court judgment if it is correct on any legal ground. We
have discussed those grounds above.

 For the reasons given, we overrule the Commission's only point of error and the
City's first point of error.



OFF-SYSTEM SALES REVENUES


 Section 23.23(b)(2)(A) requires that a utility maintain and provide the Commission
information showing, among other things, the utility's "off-system sales revenues." These are
revenues derived from a utility's sales of excess electric power to other utilities. Under
§ 23.23(b)(2)(B)(i), the net revenues from these sales may be set off against costs in calculating,
for reconciliation purposes, a utility's "known or reasonably predictable fuel costs."

 In the reconciliation period of docket number 8588, the case we now review, the
Company received from off-system sales a net revenue equal to $3,099,564 above its costs for fuel
and fuel-related items. In its final order, the Commission declined to deduct any part of this sum
in calculating the Company's known or reasonably predictable fuel costs. The agency noted in
its order, however, that in future reconciliation periods the agency would deduct 75 percent of
such revenues in calculating known or reasonably predictable fuel costs. (3) In its finding of fact 11,
the Commission stated: (1) profits from off-system sales result jointly from the Company's efforts
to make such sales and from the availability of electric power generated from facilities paid for,
in effect, by the Company's customers; (2) consequently, in future reconciliation periods the
Commission would assign 75 percent of the profits to the customers' benefit and 25 percent to the
Company's benefit to encourage the Company to continue making such sales; and (3) for the
reconciliation period covered in docket number 8588, however, the profits from off-system sales
would continue to be excluded from the reconciliation calculations.

 In its second point of error, the City argues the Commission erred by not deducting
all off-system sales revenues from the Company's known and reasonably predictable fuel costs
and contends the district court erred in affirming this aspect of the agency order.



Discussion and Holdings


 The City argues the Commission was obliged to deduct all profits from off-system
sales, in calculating the Company's known and reasonably predictable fuel costs, because the
agency lacked the power to divide such profits and to assign one part to the Company's benefit
and another part to its customers' benefit. The City bases its argument on PURA § 41(c) which
defines the "net income" factor used to fix a utility's rates under PURA § 39(a). (4) PURA § 41(c)
defines "net income" as "the total revenues of the public utility less all reasonable and necessary
expenses as determined by the Commission." (emphasis added). The substance of the City's
argument is that the statutory term "total revenues" implies an entirety; hence it is not divisible
in an agency proceeding that pertains to ratemaking. We disagree.

 In PURA the Commission received from the legislature powers that are broad and
flexible:



The commission has the general power to regulate and supervise the business of
every public utility within its jurisdiction and to do all things, whether specifically
designated in this Act or implied herein, necessary and convenient to the exercise
of this power and jurisdiction. [PURA § 16(a)]


The commission is hereby vested with all authority and power . . . to insure
compliance with the obligations of public utilities in this Act. [PURA § 37]


It shall be the duty of the [commission] to insure that every rate . . . shall be just
and reasonable. [PURA § 38]


In fixing a reasonable return on invested capital, the [commission] shall consider
. . . the efficiency of the utility's operations, and the quality of the utility's
management. [PURA § 39(b)].



The breadth of discretion implied by these statutory expressions is contradicted absolutely by the
straightjacket theory that the City erects upon an implication imputed to the term "total revenues." 
Granted that some more particular provision in PURA might have denied the Commission
discretion to apportion net revenues from off-system sales, expressly or by necessary implication,
we believe the term "total revenues" is not such a provision. We believe, for example, that the
legislature did not intend that any implication imputed to the term "total revenues" should deny
the Commission discretion to divide such revenues if the division was necessary to insure a rate
that is "just and reasonable" or to secure "efficiency" in utility operations and an acceptable
"quality" in utility management. And we point out that efficient operations and high-quality
management were the Commission's express objectives in choosing to apportion sales revenues
in this case.

 The City suggests no general principle which prohibits the division and
apportionments made in the present case; the City relies solely upon the implication it attributes
to the term "total revenues." This implication is not the Commission's interpretation of that
expression, for section 23.23(b)(2)(B)(i) of that rule contemplates consideration of other
"conditions or events" that bear upon a utility's fuel and fuel-related costs in the reconciliation
context. The division and apportionment of future revenues in this case amounts to an agency
interpretation of the fuel rule. We see nothing unreasonable or ultra vires in that interpretation,
and the fuel rule pertains ultimately to a utility's operating expenses, not its revenues.

 We, therefore, overrule the City's contention that the Commission exceeded its
power and discretion when it apportioned the off-system sales revenues.

 The City contends there was insufficient evidence adduced in the agency proceeding
to support a reasonable conclusion that an allocation of a part of the benefit to the Company would
provide an incentive to make future sales of a like kind for the ultimate benefit of its customers. 
The argument refers to that part of the Commission's finding of fact 11 which stated the agency's
reason for allocating 25 percent of the profits to the benefit of the Company in the future. The
Commission's declaration merely explained why the agency made the allocation; it does not
purport to be the declaration of a fact inferred by the agency from evidence adduced in the
contested case. See Davis, supra. We overrule the City's contention.

 The City contends finally that providing the Company an incentive to make off-system sales was not a relevant statutory factor in establishing reconcilable fuel costs;
consequently, the Commission's decision on that basis amounted to an abuse of discretion under
South Plains Electric Cooperative, 635 S.W.2d at 957. We disagree.

 In promulgating the fuel rule, the Commission responded to the legislative
prohibition against fuel-adjustment "pass-throughs." It has not been suggested that the fuel rule,
based in part upon predicted fuel costs with periodic reconciliations to actual costs, is an
unreasonable rule or one out of harmony with PURA. We have held that the rule lay within the
Commission's statutory power to enact at its discretion. The rule establishes, at bottom, an
arrangement by which a hypothetical cost of fuel may be used to calculate a utility's "reasonable
and necessary operating expenses" for purpose of PURA § 39(a), while allowing concurrently for
a consideration of some of the stated factors listed in PURA § 39(b) "in addition to other
applicable factors." If nothing else, the allocation refers directly to "the efficiency of the utility's
operation." In the words of PURA § 39(a), it is at least another "applicable factor." We overrule
the City's contention.

 For the reasons given, we overrule the City's second point of error.

 Finding no error, we affirm the district-court judgment.



 

 John Powers, Justice

[Before Justices Powers, Aboussie and B. A. Smith]

Affirmed

Filed: March 10, 1993

[Publish]

1.   See 16 Tex. Admin. Code § 23.23(b)(2)-(8) (1981, since amended).
2.   PURA § 43(g)(1) provides that "[a] rate or tariff set by the commission shall not
authorize a utility to automatically adjust and pass through to its customers changes in fuel
or other costs of the utility." The provision was added by Acts 1983, 68th Leg., p. 647, ch.
146, § 2, effective August 29, 1983.
3.   No party suggests that the futurity aspect of this part of the agency order should
preclude judicial review. We see no reason why it should. See Bernard Schwartz,
Administrative Law § 9.1, at 522-25 (2d ed. 1984).
4.   In a determination of allowable fuel costs, the original version of the Fuel Rule listed
six costs to be considered, plus "other costs associated with generated and purchased power." 
8 Tex. Reg. 3540 (1983) (16 Tex. Admin. Code § 23.23(b)(2)(B), since amended). The rule
further instructed that "the commission shall consider revenues and costs from these other
activities, including off-system sales, to assure that the ratepayers receive an appropriate portion
of benefits associated with such revenues." Id. (emphasis added). Nothing in PURA or in the
Commission's current regulations deals explicitly with the calculation of off-system sales in the
reconciliation of fuel costs.


 Although the current version of the Fuel Rule does not contain specific reference to off-system sales, the general language has been amended to require consideration of "other costs and
revenues associated with generated or purchased power." 16 Tex. Admin. Code § 23.23(b)
(2)(B)(i) (emphasis added).